[Civ. No. 21540. First Dist., Div. One. May 28, 1964.]

DEPARTMENT OF EMPLOYMENT, Petitioner, v. IN-DUSTRIAL ACCIDENT COMMISSION, JOSEPH EBERLE et al., Respondents.

534

Stanley Mosk, Attorney General, and B. Franklin Walker, Deputy Attorney General, for Petitioner.

Everett A. Corten, Rupert A. Pedrin and John P. Devine for Respondents.

MOLINARI, J.—Petitioner, the Department of Employment of the State of California, seeks an annulment of that portion of the award of respondent Industrial Accident Commission (hereinafter sometimes referred to as respondent) disallowing a claim of lien for certain hospital expenses.

### Question Presented
Are the hospital benefits provided by Unemployment Insurance Code section 2801 allowable as a lien against workmen's compensation awards under Labor Code section 4903?

### The Record
Joseph Eberle suffered an injury in November 1962 for which he was hospitalized on December 1, 1962. Disability

benefits were paid to him by petitioner pursuant to the Unemployment Insurance Code at the rate of $63 per week for the period from December 1, 1962, to April 25, 1963. On January 21, 1963, petitioner paid to St. Mary's Hospital the sum of $240 for hospital confinement at the rate of $12 per day for the period from December 15, 1962, to January 3, 1963, inclusive. These payments were made pursuant to the provisions of Unemployment Insurance Code section 2801,[1] and were paid directly to the hospital pursuant to Unemployment Insurance Code section 2711.[2] On February 13, 1963, Eberle filed an application with respondent Industrial Accident Commission claiming that his injury arose out of and in the course of his employment. Following Eberle's application for workmen's compensation benefits, petitioner filed its notice and request for allowance of lien with respondent commission requesting allowance for ordinary disability payments in the sum of $1,314 under Labor Code section 4903, subdivision (f), and for the additional benefits for hospital confinement in the sum of $240 under Labor Code section 4903, subdivision (b).[3] Respondent thereafter made its findings and award wherein it found that petitioner

[1]Unemp. Ins. Code, § 2801, reads: "During confinement in a hospital, an individual eligible for benefits under this part is entitled to receive in addition to all benefits otherwise provided in this division and irrespective of his receipt of remuneration from his employer, the amount of twelve dollars ($12) for each day not in excess of 20 days in any one disability benefit period, during which he is so confined pursuant to orders of his physician."

[2]Unemp. Ins. Code, § 2711, reads: "Where an individual eligible for additional benefits during hospital confinement has first given his written consent with respect to a particular claim, the additional benefits shall be paid directly to the hospital in which he is confined in accordance with authorized regulations adopted by the director prescribing procedure governing such payments. Any additional benefits during hospital confinement in excess of the daily rate of charge for care, including special care or treatment by a hospital, shall be paid to the disabled individual as otherwise provided in this division."

[3]Lab. Code, § 4903, at the times pertinent to these proceedings, read in part: "The commission may determine, and allow as a lien against any amount to be paid as compensation: ... (b) The reasonable expense incurred by or on behalf of the injured employee, as provided by Article 2 of Chapter 2 of Part 2 of this division. ... (f) The amount of unemployment compensation disability benefits which have been paid under or pursuant to the Unemployment Insurance Code in those cases where, pending a determination under Division 4 of this code, there was uncertainty whether such benefits were payable under the Unemployment Insurance Code or payable hereunder; provided, however, that any lien

was entitled to a lien against unpaid compensation for unemployment compensation disability benefits paid to Eberle in said total sum of $1,314, but made no findings with respect to the request for a lien for the hospital benefits. Petitioner thereupon filed its petition for reconsideration objecting to the failure of respondent to order the payment of a lien award for said hospital benefits. Said petition was denied by respondent and thereupon the instant proceedings ensued.[4]

### Contentions

Petitioner contends that hospital benefits provided for by section 2801 of the Unemployment Insurance Code are allowable lien claims under Labor Code section 4903 when paid to a hospital by way of assignment pursuant to Unemployment Insurance Code section 2711. It claims the benefits paid constitute hospital expenses incurred by it on behalf of an injured employee within the meaning of Labor Code section 4903, subdivision (b). Respondent, in turn, claims that pursuant to Labor Code section 4903, subdivision (f), the only payments made under the Unemployment Insurance Code for which a lien may be allowed are payments of disability benefits and that the lien allowed may only attach to an award, made to the claimant, of compensation for temporary disability indemnity. Respondent asserts that its contention is consonant with the holding and reasoning of *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.*, 170 Cal.App.2d 412 [339 P.2d 225]. To this last assertion petitioner responds that the issue is governed by the later case of *Gerson* v.

---

under this subdivision shall be allowed and paid as provided in section 4904.''

Lab. Code, § 4904, in part, read: ''In determining the amount of lien to be allowed for unemployment compensation disability benefits under subdivision (f) of section 4903 the commission shall allow such lien in the amount of benefits which it finds were paid for the same day or days of disability for which an award of compensation for temporary disability indemnity is made.''

[4] In her report recommending a denial of this petition, respondent's referee makes the following statement: ''In my opinion the decision I made is the only decision that could be made in view of the wording of the decision in *Fireman's Fund Insurance Co.* v. *I.A.C., Huyck, et al*, 24 C.C.C. 139 [170 Cal.App.2d 412 (339 P.2d 225)].* However, I feel the decision in that case was not correct and that on review another court would either rule to the contrary or restrict the decision in *Huyick* [*sic*] to a factual situation identical to that presented therein.''

---

*Said case is cited in the appellate reports as *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.*

*Industrial Acc. Com.*, 188 Cal.App.2d 735 [11 Cal.Rptr. 1]. In the face of these contentions we now turn to an analysis of these two cases.

### The Fireman's Fund Case

Fireman's, an unemployment insurance carrier, had issued a policy of insurance under a voluntary plan adopted by an employer and its employees pursuant to the provisions of the Unemployment Insurance Code. Ries, one of such employees, asserted a claim against his employer alleging that he had sustained a disabling injury in the course and scope of his employment. The employer's workman's compensation carrier denied the claim, whereupon Ries applied and received from Fireman's disability benefits and an additional sum for hospital benefits pursuant to the terms of the insurance policy and section 2801 of the Unemployment Insurance Code. Ries had in the interim filed an application for a hearing upon his claim for compensation. Fireman's gave notice of claim of lien upon any award of compensation made to Ries. Hearings were had upon Ries' application. The Industrial Accident Commission found that Ries sustained an injury arising out of and in the course of his employment and made an award of compensation. The award denied Fireman's a lien for the hospital benefits paid by it. Upon proceedings to review the orders of the commission the reviewing court held that an employee is not entitled to receive both workmen's compensation benefits and unemployment disability benefits. The appellate court held, however, that under sections 4903, subdivision (f), and 4904 of the Labor Code the commission may only allow a lien for unemployment compensation disability benefits and that the hospital benefits provided for by section 2801 of the Unemployment Insurance Code or by any voluntary plan are *not* disability benefits within the meaning of either the Labor Code or the Unemployment Insurance Code. The court went on to say, moreover, that Ries was entitled to the hospitalization under the workmen's compensation provision of the Labor Code and that he was not, under section 2804 of the Unemployment Insurance Code,[5]

---

[5]Unemp. Ins. Code, § 2804, reads: ''When an individual is furnished or is compensated for hospitalization pursuant to the Workmen's Compensation Law or an employer's liability law of this State or of any other state or of the federal government he shall be ineligible to receive the twelve dollars ($12) per day as provided in section 2801 for any day for which he is receiving or is eligible to receive in the form of cash payments benefits under the Workmen's Compensation Law or an employer's liability law of this State or of the federal government.''

entitled to the benefits payable under section 2801 of that code. As to the nature of the hospital benefits paid by Fireman's in the case before it the reviewing court stated: "If the payments made to Ries were made pursuant to an obligation of the voluntary plan, they constituted payments of indemnity of the same nature as payments under a policy of disability insurance as such policies are defined by section 106 of the Insurance Code, and as such were the proceeds of an investment made by him. [Citations.] If they were not made under an obligation so to do they constituted either a voluntary gift to Ries or a loan to him but in neither case did they constitute reasonable expenses incurred by Fireman's on behalf of Ries within the meaning of paragraph (b) of section 4903 of the Labor Code. The liability for hospital care was incurred by the claimant and he satisfied that liability out of his own funds and it is immaterial whether the source of those funds was his savings, indemnity paid to him by some disability insurance carrier or by Fireman's either under its policy or as a gift or loan. Inasmuch as the statute does not authorize the commission to grant a lien to a person making such payments or advances the commission was without power to award a lien to Fireman's on account of such payments." (P. 422.)

## The Gerson Case

In the *Gerson* case petitioner sustained an injury on December 6 in the course of her employment. She made no claim that her injuries were industrially sustained until February 26. In the meantime her medical and hospital expenses had been paid by Blue Cross under a plan of hospital and medical service contracted by her husband's employer with Blue Cross for the benefit of his employees and their families. This contract specifically excluded from the services which Blue Cross would be obligated to furnish any condition for which indemnities were recoverable under any Workmen's Compensation Law. Blue Cross continued to pay these benefits until August 3, when petitioner filed an application for workmen's compensation benefits. It was not until the filing of this application that Blue Cross received notice that petitioner's injury was industrial in character. It thereupon filed with the Industrial Accident Commission its claim of lien. The commission disallowed the lien. In annulling the award the reviewing court held that Blue Cross was not entitled to a lien for the benefits prior to February 26, because petition-

er was not entitled to indemnification under the workmen's compensation provisions of the Labor Code as a result of her failure to report the accident. The court did, however, allow the lien for the benefits paid subsequent to February 26, holding that under the facts of the case Blue Cross was entitled to a lien because the services furnished petitioner constituted reasonable medical and hospital services incurred by and on behalf of the injured employee under Labor Code section 4903, subdivision (b), which the employer was obligated to furnish under section 4600 of said code.[6] *Gerson* distinguished the *Fireman's Fund* case on the basis that in the case before it the expenditures made by Blue Cross were made by mistake and not under the obligations of its contract, and upon the distinction that these expenditures were not a return of an investment, nor a payment of money or the furnishing of services pursuant to a contract so to do or a loan of money under the rule laid down in *Fireman's Fund*, but "simply a furnishing by Blue Cross of services to petitioner. ..." (P. 739.) The court noted that the situation was no different than if the clinic and the physicians who rendered the services to petitioner (whose bills were paid by Blue Cross), were the lien claimants.[7]

### *Reconciling the Fireman's Fund and Gerson Cases.*

A significant distinction to be recognized at the very outset is that the *Gerson* case does not involve a lien for benefits paid under the Unemployment Insurance Code. The essence of the holding in *Gerson* is that the commission may allow, as a lien against an award pursuant to Labor Code section 4903, subdivision (b), the reasonable expenses incurred for or on behalf of an injured employee in obtaining "medical and hospital" treatment for an industrial injury by one who is obligated to furnish such treatment for a nonindustrial disability only, where such expenses have been assumed under

---

[6]Lab. Code, § 4600, in pertinent part, provides as follows: "Medical, surgical, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal reasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment."

[7]The opinion of the court in both *Fireman's Fund* and *Gerson* was written by Nourse, Justice pro tem.

the mistaken belief that the disability was nonindustrial. (See *State Comp. Ins. Fund* v. *Bredemann,* 11 I.A.C. 30, to the same effect.) Pursuant to Labor Code sections 4903, subdivision (b), and 4600 any person who incurs medical and hospital expenses on behalf of an employee sustaining an industrial injury where the employer neglects or refuses seasonably to provide the medical and hospital treatment he is required to provide is entitled to a lien for the reasonable value of the same. (*Department of Mental Hygiene* v. *Industrial Acc. Com.,* 183 Cal.App.2d 832, 833-834 [7 Cal.Rptr. 257]; see *Simien* v. *Industrial Acc. Com.,* 138 Cal.App.2d 397, 399-400 [291 P.2d 951]; *California Union Ins. Co.* v. *Industrial Acc. Com.,* 183 Cal.App.2d 644, 648 [7 Cal.Rptr. 67].) Under Labor Code section 4600 an employer has the primary duty to provide medical treatment for an industrial injury from which he is not to be relieved except for good cause. (*Simien* v. *Industrial Acc. Com., supra,* at p. 400.) Accordingly, section 4600 is applicable where the employer has notice of the injury, but refuses to furnish such treatment; it is also applicable where the employee has no actual or imputed knowledge that the injury is service-connected, and such discovery is made after he obtains medical treatment on his own behalf. (*Simien* v. *Industrial Acc. Com., supra,* at pp. 400-401.) Labor Code section 4903, subdivision (b), does not, however, authorize the allowance of a lien for medical treatment rendered for a nonindustrial disability. (*Western Union Tel. Co.* v. *Fibush,* 4 Cal.2d 185, 187-188 [48 P.2d 37]; *Department of Mental Hygiene* v. *Industrial Acc. Com., supra,* at pp. 833-834.)

The essential holding of the *Fireman's Fund* case, on the other hand, is that the additional hospital benefits paid pursuant to Unemployment Insurance Code section 2801 are not disability benefits within the meaning of the Unemployment Insurance Code and the Labor Code, and in particular section 4903, subdivision (f), of the latter. Section 4903, subdivision (f), was specifically enacted to provide a means whereby the Department of Employment, or an employer or his insurer under a voluntary plan for the payment of disability benefits, could recover for the payment of such benefits when it was finally determined that the employee was entitled to workmen's compensation because the disability was industrially caused. (*Bryant* v. *Industrial Acc. Com.,* 37 Cal.2d 215, 219 [231 P.2d 32]; *Garcia* v. *Industrial Acc. Com.,* 41 Cal.2d 689, 692-693 [263 P.2d 8]; *Fireman's Fund Indem. Co.* v.

*Industrial Acc. Com., supra,* at p. 418.) The legislative intent in the enactment of Labor Code section 4903, subdivision (f), is that a workman is not entitled to receive both unemployment disability benefits and workmen's compensation for the same period of unemployment. (*Bryant* v. *Industrial Acc. Com., supra,* at p. 219; *Garcia* v. *Industrial Acc. Com., supra,* at pp. 692-693.) The same legislative purpose is indicated by section 2629 of the Unemployment Insurance Code.[8] (*Fireman's Fund Indem. Co.* v. *Industrial Acc. Com., supra,* at p. 418.) Accordingly, as we understand the Supreme Court decisions of this state construing these statutes, the entity making voluntary unemployment disability payments is entitled to reimbursement and to the lien provided by section 4903, subdivision (f), of the Labor Code as a matter of right where, when such payments were made, there was uncertainty whether such benefits were payable under the Unemployment Insurance Code or the Labor Code.

In deciding that hospital benefits paid under Unemployment Insurance Code section 2801 are not disability payments within the meaning of Labor Code section 4903, subdivision (f), *Fireman's Fund* does not hold that an entity providing such hospital benefits is precluded in every instance from asserting a lien for reimbursement for the benefits. It should be here noted that *Fireman's Fund* was dealing with a private carrier under a voluntary plan for the payment of disability payments, and not with the Department of Employment.[9] As we view *Fireman's Fund* it was

---

[8]Unemp. Ins. Code, § 2629, reads: "Except as provided in this section, an individual is not eligible for disability benefits for any day of unemployment and disability for which he has received, or is entitled to receive benefits, in the form of cash payments for temporary disability indemnity, under a workmen's compensation law, or employer's liability law of the State, or of any other state, or of the Federal Government. If such cash payments are less than the amount he would otherwise receive as disability benefits under this part, he shall be entitled to receive for such day, if otherwise eligible, disability benefits, reduced by the amount of such cash payments. ..."

[9]Unemp. Ins. Code, § 3251, provides that an employer or a majority of his employees, or both, may apply to the Director of Employment for approval of a voluntary plan for the payment of disability benefits, and that the benefits for loss of wages under such plan shall be separately stated from other benefits, if any. The plan may provide for the assumption by an admitted disability insurer of the liability of the employer to pay the benefits afforded by the plan (§§ 3254, subd. (d), 3258), in which case, the insurer is substituted for the employer with respect to any assessments which relate to the portion of the voluntary plan insured by such insurer. (§ 3259.) When such a voluntary plan is approved

decided upon circumstances peculiar to the facts of the case involving the obligations of a private carrier under a voluntary plan. *Fireman's Fund* recognizes that the employee in the case before it was, under the workmen's compensation provisions of the Labor Code, entitled to be furnished the hospitalization for which he incurred liability and that he was not, under the express provisions of section 2804 of the Unemployment Insurance Code, entitled to the benefits payable under section 2801 of that code. The rationale for the holding in *Fireman's Fund* is found in the following language: "We are not advised as to whether under the voluntary plan under which Fireman's was the indemnitor of the employer, Ries was entitled to these hospital benefits irrespective of his rights to compensation or whether that plan only gave him the benefits provided for by section 2801." (P. 422.) The reviewing court apparently took cognizance of subdivision (a) of section 3254 of the Unemployment Insurance Code which provides that under a voluntary plan the rights afforded to covered employees, with respect to disability and additional benefits, must be greater than those provided for in the code. The court went on to state that if the payments made to the employee were pursuant to the obligation of the voluntary plan they constituted payments of indemnity of the same nature as payments under a policy of disability insurance as such policies are defined by section 106 of the Insurance Code, and as such were proceeds of an investment made by him.[10] The appellate court was obviously referring to a voluntary plan providing for the payment of hospital benefits pursuant to a disability insurance policy issued by an admitted disability insurer irrespective of the payment of workmen's compensation benefits pursuant to the Labor Code.[11] It is convenient to note here that an important distinction between the *Gerson* and *Fireman's Fund* cases is

the employee is not entitled to benefits from the Disability Fund provided for in the Unemp. Ins. Code (§ 3253; see §§ 3001, 3004, 2625), but receives the benefits from the employer or his insurer under the provisions of the voluntary plan.

[10]Ins. Code, § 106, provides as follows: "Disability insurance includes insurance appertaining to injury, disablement or death resulting to the insured from accidents, and appertaining to disablements resulting to the insured from sickness."

[11]Unemp. Ins. Code, § 3254, subd. (d), in part provides that if a voluntary plan provides for insurance, the form of the insurance policies to be issued must have been approved by the Insurance Commissioner and that such policies are to be issued by an admitted disability insurer.

that in the former the policy of insurance specifically provided that the insurer was not obligated to furnish indemnities recoverable under any Workmen's Compensation Law.

### Unemployment Insurance Code sections 2801 and 2804 Construed

Section 2801 provides, in essence, that an individual eligible for unemployment disability benefits is entitled, in addition to such benefits, to the sum of $12 for each day he is confined in a hospital pursuant to order of his physician not in excess of 20 days in any one disability period. The waiting period requirement prerequisite to the receipt of disability benefits is not applicable to such hospital benefits. (§ 2802.)[12] Section 2804 provides, however, that when a person is furnished or is compensated for hospitalization pursuant to the Workmen's Compensation Law he is ineligible to receive the hospital benefits provided for in section 2801 for any day for which he is receiving or is eligible to receive, in the form of cash payments, benefits under the Workmen's Compensation Law. It is apparent, therefore, that before section 2804 may be involved two conditions are necessary: (1) The individual must be furnished or be compensated for hospitalization under the Workmen's Compensation Law, and (2) he must be receiving or be eligible to receive workmen's compensation. It is convenient to point out here that pursuant to section 4650 of the Labor Code there is no waiting period for the payment of workmen's compensation where the injury necessitates hospitalization. In such a case the disability payment shall be made from the first day the injured employee leaves work or is hospitalized.

The Workmen's Compensation Law and the Unemployment Insurance Code should be construed together so as to effectuate the legislative intent. (*Aetna Life Ins. Co.* v. *Industrial Acc. Com.*, 38 Cal.2d 599, 604 [241 P.2d 530].) As indicated by the decisions of our Supreme Court in

---

[12]Unemp. Ins. Code, § 2802, provides: ''An individual eligible for additional benefits under this chapter shall not be subject to any waiting period requirement as a condition precedent to the receipt of any benefits under this part during the disability which caused the confinement.''

Unemp. Ins. Code, § 2627, applicable to disability benefits, provides in pertinent part as follows: ''A disabled individual is eligible to receive disability benefits ... only if the director finds that: ... (b) He has been unemployed and disabled for a waiting period of seven consecutive days during each disability benefit period with respect to which waiting period no benefits are payable; ...''

the *Bryant, Garcia* and *Aetna* cases it was the intention of the Legislature to avoid overlapping and duplicating payments in the application of the respective acts. In sum, disability industrially caused is covered by the Workmen's Compensation Law (Lab. Code) and where it is not so caused it is covered by the Unemployment Insurance Code. Accordingly, we are of the opinion that the rationale of the *Bryant, Garcia* and *Aetna* cases is applicable to the payment of hospital benefits. It should be here noted that the provisions of section 2804 are in substance the same as those of section 2629 of the Unemployment Insurance Code which disqualify an applicant for disability benefits for a period of unemployment which is due to a disability for which he is entitled to workmen's compensation. As stated in the *Bryant* case, the clear intent of the Legislature in enacting this statute is to disqualify an applicant for unemployment disability benefits for a period of unemployment which is due to a disability for which he is entitled to workmen's compensation.[13] Analogizing the language of sections 2629 and 2804 we think it is likewise clear that the Legislature intended to disqualify an individual from receiving hospital benefits under the Unemployment Insurance Code when he is receiving such hospitalization under the Workmen's Compensation Act. We are of the opinion, therefore, that an employee is not eligible to receive hospital benefits both under the Unemployment Insurance Code and the Labor Code while he is receiving or is eligible to receive workmen's compensation. We are satisfied, moreover, that this rule is not only applicable to the Department of Employment but also to an employer or its insurer under a voluntary plan, unless, as we have hereinabove indicated, such employer or insurer obligates to pay such additional hospital benefits irrespective of whether the employee is receiving or is eligible to receive workmen's compensation.

*Allowance of Lien Pursuant to Labor Code section 4903,*
*subdivision (b).*

 Consonant with the foregoing principles, and in conformity with what we believe to be the legislative intent, an

---

[13]The *Bryant* case was then construing § 207(b) of the Unemployment Insurance Act (Stats. 1947, First Ex. Sess. 1946, ch. 81, § 1, as amended in 1947; 3 Deering's Gen. Laws Act 8780d). § 207(b) became § 2629 of the Unemp. Ins. Code when the latter was enacted in 1953. Subsequent amendments to § 207(b) and its successor, § 2629, have not changed the substance of the statute.

entity paying the hospital benefits provided for in section 2801 of the Unemployment Insurance Code under the mistaken belief that the disability is nonindustrial is entitled to a lien against any amount to be paid as compensation pursuant to the provisions of Labor Code section 4903, subdivision (b), to the extent that such payments are found by the commission to be reasonable. The reasonable value of such benefits is a hospital service incurred by and on behalf of an injured employee which the employer is obligated to furnish pursuant to Labor Code section 4600. As stated in the *Gerson* case, the furnishing of such a benefit is "simply a furnishing ... of services" to the employee. (P. 739.) The conclusion herein reached is likewise applicable, in conformity with the applicable principles, where the hospital benefits have been paid under section 2801 of the Unemployment Insurance Code in those cases where, pending a determination whether the injury is industrial, there is uncertainty whether such benefits are payable under that code or the Labor Code; and also where such benefits are paid to an employee who has no actual or imputed knowledge that the injury is service-connected, and such discovery is made after he obtains medical treatment on his own behalf. We are persuaded to the conclusion reached by us by the following statements in the *Garcia* case: "Both the Workmen's Compensation Act and the Unemployment Insurance Act are remedial statutes and are to be liberally construed for the purpose of accomplishing their objects. Obviously, a primary and common object is the prompt cash assistance of a disabled workman. To that end, the immediate payment of benefits under the Unemployment Insurance Act where there is a question whether benefits are payable under the workmen's compensation law, is highly desirable. In the *Aetna* case [citation] we recognized that the proper conduct of the business of an insurance company carrying unemployment compensation disability benefit insurance would inevitably tend to make it delay payments to the workman in doubtful cases pending determination of the question as to whether the disability was compensable under the Workmen's Compensation Act, unless such carrier could be assured that payments advanced under such circumstances would in all proper cases be recoverable upon determination of the controlling facts." (P. 693.)

*The Instant Case*

 Applying the rationale of the cases discussed to the case at bench, we are satisfied that petitioner is entitled to a

lien for the reasonable value of the hospital benefits paid by it to St. Mary's Hospital. At the time the hospital benefits were paid, Eberle had applied for disability benefits under the Unemployment Insurance Act. There is no showing, or any contention made, that at that time petitioner knew or had reason to believe that the injury was industrial. It was not until after petitioner had paid disability payments to Eberle, and after the payment of the subject hospital benefits, that Eberle claimed that his injury was of industrial origin. ▪▪▪ The subsequent determination by the commission that the injury was service-connected was an adjudication that Eberle had sustained such injury in the course and scope of his employment in November 1962. Accordingly, when he was hospitalized on December 1, 1962, he was entitled to the furnishing of hospitalization by his employer and to the payment of workmen's compensation under the Workmen's Compensation Act. Therefore, he was neither entitled to the disability benefits under Unemployment Insurance Code section 2629, nor the additional hospital benefits pursuant to section 2804 of that code.

▪▪▪ Although the instant case involves a situation where the hospital benefits provided for by Unemployment Insurance Code section 2801 were paid directly to the hospital pursuant to the employee's written consent as provided in section 2711 of that code, we do not hold that compliance with the latter section is a condition precedent to the allowance of the subject lien. Section 2801 contemplates that the benefits therein provided be paid to the individual directly, and not to a hospital, unless the individual eligible for such benefits gives his written consent as provided in section 2711. These sections, of course, are intended to apply, as we have hereinabove pointed out, to the payment of hospital benefits due where the injury is nonindustrial. Accordingly, where they are paid out under circumstances supporting a belief that the injury is not service-connected, as hereinbefore discussed, the lien is allowable, in a proper case, whether the hospital benefits are paid directly to the hospital, with or without the employee's written consent, or directly to the employee himself.

For the reasons above stated, that portion of the award which denies petitioner's claim of lien for hospital benefits paid by it to St. Mary's Hospital is annulled, and the cause is remanded to the Industrial Accident Commission for the purpose of determining the reasonableness of the amount

claimed as such hospital expense and allowing the amount so determined as a lien against the sum to be paid as compensation in accord with this opinion.

Bray, P. J., and Sullivan, J., concurred.